UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE LEGACY AGENCY, INC.,

                              Petitioner,                              25-cv-1117 (PKC)

        -against-

                                                      ORDER

MICHAEL MAULINI,

                              Respondent.
------------------------------------------------------------x

CASTEL, U.S.D.J.

Petitioner The Legacy Agency, Inc. ("TLA") seeks an order confirming an arbitration award issued on October 31, 2024, against Respondent Michael Maulini ("Maulini"). The arbitrator denied Maulini's request for partial reconsideration (together with the final award, the "Award") on January 20, 2025. TLA also asks the Court to award interest and attorney's fees and costs incurred in seeking to confirm the Award in this action. This Petition was filed on February 10, 2025, and TLA served Maulini via "nail and mail" service under New York CPLR sections 308 and 313. (ECF 15 at 2.) Maulini has not answered or appeared in the action. For the reasons stated below, the Award will be confirmed.

I.      Legal Standard

The Second Circuit has held that "default judgments in confirmation . . . proceedings are generally inappropriate" and that petitions to confirm arbitral awards should be "treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006). Even so, confirmation of an

arbitration award is typically "'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,' and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" Id. at 110 (citation omitted). As the Second Circuit further explained, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case[.]' Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." Id. (citation omitted) (internal quotation marks omitted).

II.     The Award is Confirmed

TLA is "a sports representation and marketing agency" that "employs agents to represent professional athletes." (ECF 1 ¶ 1.) TLA employed Maulini as an agent representing professional baseball players until November 16, 2018, the date Maulini resigned. (Id. ¶ 2.) His exit from TLA, which occurred before the end of his employment term, led to disputes between the parties under an employment agreement (the "Employment Agreement") and a separate Non-Disclosure and Non-Solicitation Agreement ("NDA") between TLA and Maulini. (Id. ¶¶ 2, 4-9.)

The arbitration clauses in the Employment Agreement and NDA are broad, covering "[a]ny dispute, controversy, or claim arising out of or relating to" the Employment Agreement, (ECF 1-2 at 13), and "[a]ll disputes between" TLA and Maulini "involving the validity, interpretation, application, enforcement or alleged breach of any of the restrictive covenants and clauses relating to the duty of loyalty" and "[a]ll disputes . . . other than those" relating to the restrictive covenants and duty of loyalty under the NDA, (id. at 25-26), respectively.

The arbitration proceeded pursuant to the Major League Baseball Players Association ("MLBPA") Regulations Governing Player Agents (the "Regulations").[1] (ECF 6 at 5.)  The Regulations mandate that arbitrations within their ambit be held at the MLBPA offices in New York City and provide that the MLBPA shall select the arbitrator.  (ECF 1-3 at 52.)  The Regulations also confer broad authority on the arbitrator, who "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  (Id.)  Neither party objected to the MLBPA's choice of arbitrator or the arbitrator's authority to hear the matter.  (See ECF 1 ¶ 15; ECF 6 at 9.)

TLA alleged "that Maulini violated his duty of loyalty to TLA, breached his restrictive covenants, and breached his Employment Agreement by resigning without good reason."  (ECF 1 ¶ 13.)  Maulini actively defended himself, countering that good reason to resign existed because TLA breached the Employment Agreement and denying that he violated his duty of loyalty or the restrictive covenants.  (Id. ¶ 14; ECF 20-1 ¶ 5.)   Maulini also maintained that the contractual fee tails, "which required Maulini to pay to TLA a portion of the revenues he receives from players that he solicited to leave TLA[,]" in the NDA were unenforceable and sought the payment of certain commissions that he alleged TLA owed him.  (ECF 1 ¶¶ 6, 14; ECF 20-1 ¶¶ 25, 27.)

TLA and Maulini appeared by counsel and actively participated in the arbitration. Ultimately, after eight days of hearings involving the testimony of four witnesses and approximately 600 exhibits, as well as approximately 300 pages of post-hearing briefing, the

---

[1] It is not completely clear whether the arbitration clauses in the NDA and Employment Agreement, (ECF 1-2 at 5, 13, 25-26), require the disputes between Maulini and TLA to be arbitrated under AAA rules or the MLBPA Regulations.  It does not appear, however, that Maulini ever objected to the jurisdiction of the arbitrator or the application of MLBPA rules.  See Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir. 1991) (noting that a party's agreement to arbitrate can be implied from conduct such as active participation in the arbitration without objecting to the process or later seeking judicial relief).

arbitrator found for TLA in the final award, which was reasoned and 56-pages in length. (ECF 1 ¶¶ 16-17.) The arbitrator concluded Maulini did not have good reason to resign and thus breached his Employment Agreement, and accordingly awarded TLA liquidated damages in the amount of the total compensation it paid Maulini between the effective date of the Employment Agreement and the date of his resignation. (ECF 20-1 ¶¶ 81-104, 185-86.) The arbitrator declined to award TLA fee tails, finding Maulini had not breached his duty of loyalty or the NDA's restrictive covenants, and ruled that Maulini's request for the payment of certain commissions was moot. (Id. ¶¶ 176-77, 187.) The arbitrator also declined to award attorney's fees. (Id. ¶ 190.) Finally, the award stated that a failure to pay the damages within 90 calendar days of its issuance "shall result in interest being applied to the unpaid amounts consistent with the rate used to calculate interest on back pay and other monetary remedies by the National Labor Relations Board which is based on the 'short-term Federal rate'." (Id. ¶ 186.)

TLA's verified Petition states that the amount owed under the Award is $1,313,599.72. (ECF 1 ¶ 27.) TLA arrived at that sum by adding the salary, signing bonus, and commissions it paid Maulini during his employment. (Id.) TLA provided Maulini with supporting payroll and bank records.[2] (ECF 6 at 10.)

TLA's submissions adequately demonstrate that the Award, rendered in accordance with binding arbitration agreements, should be confirmed. In light of the above, there is no genuine factual dispute regarding the propriety of the Award.

---

[2] The calculations submitted by TLA do not include the pre-judgment interest amount.

4

III. <u>TLA Is Entitled to Reasonable Attorney's Fees and Costs</u>

In addition to the amount of the Award, plus interest, TLA seeks attorney's fees and costs incurred in prosecuting this confirmation.  The Employment Agreement and NDA both provide that the prevailing party in an action arising out of either agreement "shall be entitled to receive an award of all costs and expenses of such . . . action, including reasonable attorneys' fees and costs[.]"  (ECF 1-2 at 14, 26.)  The fact that the arbitrator did not award attorney's fees for the arbitration does not foreclose this Court's award of fees for the confirmation proceeding in accordance with the prevailing party provisions of the parties' agreements.  The Court will grant TLA's request for the attorney's fees and costs associated with this confirmation action.

CONCLUSION

For the foregoing reasons, TLA's Petition is GRANTED in the amount of $1,313,599.72 in damages plus interest at the rate specified by the arbitrator for the period beginning 90 calendar days after the issuance of the final award and ending on the date of Final Judgment, and thereafter at the rate set by law.  By January 20, 2026, TLA is directed to submit (1) an affidavit or declaration setting forth its attorney's fees request in connection with its Petition to confirm the Award with supporting documentation and (2) a proposed Final Judgment reflecting the foregoing, which should include the manner of the calculation of the pre-judgment interest.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

5

Dated:  New York, New York
       December 11, 2025